## EXHIBIT A

# NOTE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

| MAY 22, 2009 | LANSDALE | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

507 COLUMBIA AVENUE, LANSDALE, PA 19446

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ***234,842.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of ****5.500    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST     day of each month beginning on JULY, 2009     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2039     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO BANK, N.A.
P.O. BOX 11701, NEWARK, NJ 07101-4701     or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,333.41     .

### 4. BORROWER'S RIGHT TO PREPAY

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - Veterans Affairs
NMFL 3200 (VNOT)  Rev 2/2009

Form 3200 1/01
Amended 6/00
Wolters Kluwer Financial Services
VMP®-5G (0807)
Page 1 of 3                    Initials: CAL JaK



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000**       % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge            ☐ Other [Specify]            ☐ Other [Specify]

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
                                                -Borrower                                                        -Borrower
CHRISTOPHER R. KREAMER                          JULIE A. KREAMER

_____ (Seal)        _____ (Seal)
                                                -Borrower                                                        -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

_____ (Seal)        BY _____ (Seal)
                                                -Borrower       SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT            -Borrower
                                                                                         0002

_____ (Seal)        _____ (Seal)
                                                -Borrower                                                        -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.    N/A
BY _____
     Joan M. Mills, Vice President

 



**MTG BK 12638 PG 01312 to 01333**
INSTRUMENT # : 2009064096
RECORDED DATE: 06/19/2009 11:31:21 AM

0673483-0007V

**EXHIBIT B**

**RECORDER OF DEEDS**
MONTGOMERY COUNTY
*Nancy J. Becker*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | | Page 1 of 22 |
|---|---|---|

| | | |
|---|---|---|
| Document Type: Mortgage | Transaction #: | 576749 - 24 Doc(s) |
| Document Date: 05/22/2009 | Document Page Count: | 21 |
| Reference Info: | Operator Id: | jmacgreg |

| RETURN TO: (Wait) | SUBMITTED BY: |
|---|---|
| NORTH PENN ABSTRACT CO INC | NORTH PENN ABSTRACT CO INC |
| P O BOX 2 | P O BOX 2 |
| 35 GREEN ST | 35 GREEN ST |
| LANSDALE, PA 19446 | LANSDALE, PA 19446 |

**\* PROPERTY DATA:**
Parcel ID #:        11-00-02476-00-6
Address:            507 COLUMBIA AVE

                    PA
                    19446
Municipality:
School District:

**\* ASSOCIATED DOCUMENT(S):**

| FEES / TAXES: | | MTG BK 12638 PG 01312 to 01333 |
|---|---|---|
| Recording Fee:Mortgage | $46.50 | Recorded Date: 06/19/2009 11:31:21 AM |
| Additional Pages Fee | $34.00 | |
| Affordable Housing Pages | $34.00 | |
| **Total:** | **$114.50** | |

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania.



Nancy J. Becker
Recorder of Deeds

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.**

Montgomery County
JUN 1 9 2009
Recorder of Deeds

Prepared By:
JACKIE PINTOZZI
WELLS FARGO BANK, N.A.
1 E 22ND STREET SUITE 600
LOMBARD, IL 60148

Return To:
FINAL DOCUMENTS X2599-024

405 SW 5TH STREET
DES MOINES, IA 50309-4600

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
11-00-02476-00-6   LANSDALE
507 COLUMBIA AVE
HASAN MEHDI
B 073  U 009 L  1101  DATE: 06/19/2009

$5.00
BR

Parcel Number:
110002476006
Premises:
507 COLUMBIA AVENUE
LANSDALE, PA 19446

Redacted

———————————— |Space Above This Line For Recording Data| ————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **MAY 22, 2009**
together with all Riders to this document.

**(B) "Borrower"** is CHRISTOPHER R. KREAMER AND JULIE A. KREAMER, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

Redacted Redacted Redacted

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
NMFL #3039 (PACM) Rev 1/2009

Form 3039 1/01
VMP6(PA) (0804).00
Page 1 of 17

Initials: 

Redacted

(C) **"Lender"** is **WELLS FARGO BANK, N.A.**

Lender is a **National Association**
organized and existing under the laws of **THE UNITED STATES OF AMERICA**
Lender's address is **P. O. BOX 5137, DES MOINES, IA 50306-5137**

Lender is the mortgagee under this Security Instrument.
(D) **"Note"** means the promissory note signed by Borrower and dated **MAY 22, 2009**
The Note states that Borrower owes Lender **TWO HUNDRED THIRTY-FOUR THOUSAND EIGHT
HUNDRED FORTY-TWO AND NO/100**                                           Dollars
(U.S. $ **\*\*\*234,842.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **JUNE 1, 2039**
(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☒ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) **"Escrow Items"** means those items that are described in Section 3.
(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials                                    Form 3039 1/01
VMP6(PA) (0904).00
Page 2 of 17

Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the **COUNTY** [Type of Recording Jurisdiction] of **MONTGOMERY** [Name of Recording Jurisdiction]:

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

which currently has the address of **507 COLUMBIA AVENUE**

[Street]

**LANSDALE**                                    [City], Pennsylvania **19446**        [Zip Code]
("Property Address"):

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                        Form 3039 1/01
VMP®                                                                                          VMP6(PA) (0804).00
Wolters Kluwer Financial Services                                          Initials            Page 3 of 17

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials:

Form 3039 1/01
VMP6(PA) (0804).00
Page 4 of 17

shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials:_____

Form 3039 1/01
VMP6(PA) (0804).00
Page 5 of 17

reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials: _____     Form 3039 1/01
VMP6(PA) (0804).00
Page 6 of 17

other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials: _____

Form 3039 1/01
VMP6(PA) (0804).00
Page 7 of 17

the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials: _____   Form 3039 1/01
VMP6(PA) (0804).00
Page 8 of 17

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials_____
Form 3039 1/01
VMP6(PA) (0804).00
Page 9 of 17

Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (0804).00
Page 10 of 17
Initials:

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (0804).00
Initials: Page 11 of 17

Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials: _____
Form 3039 1/01
VMP6(PA) (0804).00
Page 12 of 17

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (0804).00
Page 13 of 17
Initials:

an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials: _____    Form 3039 1/01
VMP6(PA) (0804).00
Page 14 of 17

Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials: _____    Form 3039 1/01
VMP6(PA) (0804).00
Page 15 of 17

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____  5-22-09  (Seal)
                                     **CHRISTOPHER R. KREAMER**         -Borrower

_____    _____ 5-22-09 (Seal)
                                     **JULIE A. KREAMER**              -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                            -Borrower

_____

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                  Form 3039 1/01
VMP®                                                                                         VMP6(PA) (0804).00
Wolters Kluwer Financial Services                    Initials                                    Page 16 of 17

COMMONWEALTH OF PENNSYLVANIA, MONTGOMERY                              County ss:

On this, the **22ND**              day of **MAY, 2009**                              , before me, the
undersigned officer, personally appeared **CHRISTOPHER R. KREAMER AND JULIE A. KREAMER**

known to me (or
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

**COMMONWEALTH OF PENNSYLVANIA**
Notarial Seal
Cathleen F. Morgan, Notary Public
Lansdale Boro, Montgomery County
My Commission Expires Oct. 8, 2011
Member, Pennsylvania Association of Notaries

Title of Officer

**Certificate of Residence**
I,                              , do hereby certify that
the correct address of the within-named Mortgagee is **P. O. BOX 5137
DES MOINES, IA 50306-5137**
Witness my hand this **22ND**              day of **MAY, 2009**                  .

Agent of Mortgagee

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **22ND** day of **MAY, 2009** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to **WELLS FARGO BANK, N.A.**

(herein "Lender") and covering the Property described in the Security Instrument and located at **507 COLUMBIA AVENUE, LANSDALE, PA 19446**

[Property Address]

**VA GUARANTEED LOAN COVENANT:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**

**(VMP®)-538R** (9904).01            3/99
Page 1 of 3            Initials: _Ahz_ _Qak_
VMP MORTGAGE FORMS - (800)521-7291

Redacted

• LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.



Redacted

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

| | |
|---|---|
| CHRISTOPHER R. KREAMER        -Borrower | JULIE A. KREAMER        -Borrower |
| _____        -Borrower | _____        -Borrower |
| _____        -Borrower | _____        -Borrower |
| _____        -Borrower | _____        -Borrower |

-538R (9904).01                    Page 3 of 3

## *Stewart Title Guaranty Co.*

Commitment N

### SCHEDULE C
### Legal Description

ALL THAT CERTAIN messuage and lot or piece of land, situate in the West Ward of the Borough of Lansdale, County of Montgomery and State of Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a stone set for a corner on the Northeast side of Columbia Avenue at the distance of 337 feet 4 inches Southeastward from the middle line of Towamencin Avenue.

CONTAINING in front or breadth on said Columbia Avenue Southeastward 31 feet 4 inches and extending of that width Northeastward between parallel lines at right angles to said Columbia Avenue 155 feet to the Southwest side of an alley 20 feet wide, dedicated to public use forever the Southeast line thereof passing through the middle of the partition wall between this and adjoining house.

HAVING erected thereon a dwelling known as 507 Columbia Avenue, Lansdale, PA 19446

BEING Parcel Number 11-00-02476-00-6

BEING the same premises which Alphonso Jackson, Secretary of Housing and Urban Development, by Indenture dated April 5, 2007, and recorded April 19, 2007, in the Office of the Recorder of Deeds in and for the County of Montgomery, Pennsylvania, in Deed Book 5643, Page 2703, granted and conveyed unto Mehdi Hasan, in fee.

PA-3

 



**MTG BK 15276 PG 00562 to 00564**
INSTRUMENT # : 2021063305
RECORDED DATE: 06/02/2021 09:37:39 AM

5946239-0019+

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| **OFFICIAL RECORDING COVER PAGE** | | Page 1 of 3 |
|---|---|---|
| **Document Type:** Mortgage Assignment | **Transaction #:** | 6327079 - 1 Doc(s) |
| **Document Date:** 05/05/2021 | **Document Page Count:** | 2 |
| **Reference Info:** | **Operator Id:** | dawhitner |

| **RETURN TO:** (Ingeo) | **PAID BY:** |
|---|---|
| WELLS FARGO BANK, N.A. | WELLS FARGO BANK NA |
| 2701 WELLS FARGO WAY | |
| MINNEAPOLIS, MN 55440-1629 | |

**\* PROPERTY DATA:**

| | |
|---|---|
| Parcel ID #: | 11-00-02476-00-6 |
| Address: | 507 COLUMBIA AVE |
| | LANSDALE PA |
| | 19446 |
| Municipality: | Lansdale Borough (100%) |
| School District: | North Penn |

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12638 PG 01312

| **FEES / TAXES:** | | MTG BK 15276 PG 00562 to 00564 |
|---|---|---|
| Recording Fee: Mortgage | | Recorded Date: 06/02/2021 09:37:39 AM |
| Assignment | $80.75 | |
| **Total:** | $80.75 | · I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION**

eRecorded

06/02/2021 09:37:39 AM                    MTG BK 15276  PG 00563                              MONTCO

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
**WELLS FARGO BANK, N.A.**
**2701 WELLS FARGO WAY**
**N9408-05C**
**MINNEAPOLIS, MN 55440-1629**

WHEN RECORDED MAIL TO:            MONTGOMERY COUNTY COMMISSIONERS REGISTRY
**WELLS FARGO BANK, N.A.**          11-00-02476-00-6    LANDSALE BOROUGH
**MAC: N9408-05C**                  507 COLUMBIA AVE
**PO BOX 1629**                     KREAMER CHRISTOPHER R & JULIE A        $15.00
**MINNEAPOLIS, MN 55440-1269**      B 073  L  U 009  1101 05/27/2021        JW
**ATTN: ASSIGNMENT TEAM**

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A. , 1 HOME CAMPUS , DES MOINES, IA 50328**, by these presents does convey, assign, transfer and set over to: **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST I , 1600 SOUTH DOUGLASS ROAD SUITE 200-B, ANAHEIM, CA 92806**, the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$234842.00** is recorded in the State of **PENNSYLVANIA**, County of **Montgomery** Official Records, dated **05/22/2009** and recorded on **06/19/2009**, as Instrument No. **2009064096** in Book No. **12638**, at Page No. **01312**
Original Mortgagor: **CHRISTOPHER R KREAMER AND JULIE A KREAMER, HUSBAND AND WIFE**
Original Mortgagee: **WELLS FARGO BANK, N.A.**
Property Address: **507 COLUMBIA AVENUE LANSDALE, PA 19446**
PIN #: **11-00-02476-00-6**
Date: **05/05/2021**

**WELLS FARGO BANK, N.A.**
By:                                         *Electronic*
                                            *Signature*

XEE LEE, Vice President Loan Documentation

eRecorded

STATE OF MN
COUNTY OF Hennepin } s.s.

On **05/05/2021** before me, **JENNIFER RAE ANDERSON**, a Notary Public, personally appeared **XEE LEE, Vice President Loan Documentation** of **WELLS FARGO BANK, N.A.** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

JENNIFER RAE ANDERSON, Notary Public    *Electronic Notarization*
Commission #: **20506727**
My Commission Expires: **01/31/2025**

*JENNIFER RAE ANDERSON*
*NOTARY PUBLIC - MINNESOTA*
*MY COMMISSION EXPIRES 01/31/2025*

I do certify that the precise address of **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST I** is **1600 SOUTH DOUGLASS ROAD SUITE 200-B, ANAHEIM, CA 92806**

Attested By:

*Electronic Signature*

XEE LEE, Vice President Loan Documentation

Redacted

 

**MTG BK 15747 PG 00631 to 00635**
INSTRUMENT # : 2023019300
RECORDED DATE: 04/19/2023 09:19:29 AM



6211329-0020J

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | | Page 1 of 5 |
|---|---|---|

| | | |
|---|---|---|
| **Document Type:** Mortgage Assignment | **Transaction #:** | 6754799 - 2 Doc(s) |
| **Document Date:** 04/11/2023 | **Document Page Count:** | 4 |
| **Reference Info:** | **Operator Id:** | dawhitner |

| **RETURN TO:** (EPN) | **PAID BY:** |
|---|---|
| Manley Deas Kochalski LLC | MANLEY DEAS KOCHALSKI LLC |
| 1400 Goodale Blvd. | |
| Grandview, OH 43212 | |
| 6149171758 | |

**\* PROPERTY DATA:**

| | |
|---|---|
| Parcel ID #: | 11-00-02476-00-6 |
| Address: | 507 COLUMBIA AVE |
| | LANSDALE  PA |
| | 19446 |
| Municipality: | Lansdale Borough (100%) |
| School District: | North Penn |

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12638 PG 01312

| **FEES / TAXES:** | | MTG BK 15747 PG 00631 to 00635 |
|---|---|---|
| Recording Fee:Mortgage | | Recorded Date: 04/19/2023 09:19:29 AM |
| Assignment | $80.75 | |
| Additional Names Fee | $1.00 | I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania. |
| **Total:** | $81.75 | |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
**NOTE: If document data differs from cover sheet, document data always supersedes.**
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
11-00-02476-00-6    LANSDALE BOROUGH
507 COLUMBIA AVE
KREAMER CHRISTOPHER R & JULIE A          $15.00
B 073  L  U 009  1101 04/18/2023                JB

Prepared By and Return to after Recording:
Manley Deas Kochalski LLC
P.O. Box 165028 Columbus OH  43216-5028
614-220-5611
Parcel No.  11-00-02476-00-6
Property Address:  507 Columbia Avenue, Lansdale, PA 19446

# ASSIGNMENT OF MORTGAGE

**Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust I ("Assignor")**, whose address is c/o Carrington Mortgage Services, LLC, 1600 South Douglass Road Suite 200-A, Anaheim, CA 92806, hereby executes this mortgage assignment for the purpose of acknowledging, and placing third parties on notice of, the transfer, conveyance, and assignment to **Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Society, FSB, as trustee of Stanwich Mortgage Loan Trust J ("Assignee")**, whose address is c/o Carrington Mortgage Services, 1600 South Douglass Road, Suite 200-A, Anaheim, California  92806, its interest in that mortgage in the amount of $234,842.00, dated May 22, 2009 and executed and delivered by **Christopher R. Kreamer and Julie A Kreamer, husband and wife**, which mortgage was recorded on June 19, 2009 as Instrument Number 2009064096, Mortgage Book 12638, Page 01312 in Montgomery County, Pennsylvania records (the "Mortgage"). For the purpose of eliminating any question regarding the assignment of this mortgage, Assignor does hereby transfer, convey and assign to Assignee all right, title and interest that it has in and to the Mortgage to Assignee.

The property encumbered by such mortgage is described as follows:  See Exhibit "A" for legal description.

The Recorder is hereby requested to cross-reference this Assignment to the recording reference of the mortgage hereinbefore described.

23-006993                                            APR

In witness whereof, Wilmington Savings Fund Society, FSB, As Trustee of Stanwich Mortgage Loan Trust I by Carrington Mortgage Services, LLC, As Servicer and Attorney in Fact has executed this Assignment this **11ᵀᴴ** day of ___April___, 20**23** .

Wilmington Savings Fund Society, FSB, As Trustee of Stanwich Mortgage Loan Trust I by Carrington Mortgage Services, LLC, As Servicer and Attorney in Fact

_____
Signature of Individual

Chris Lechtanski, VP, Collateral Operations for Carrington Mortgage Services, LLC Attorney in Fact
Print Name and Title of Individual

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ____**Texas**____ )
____**Collin**____ ) SS
COUNTY OF _____ )

On this _11th_ day of _April_, 20**23** before me, ____Marjorie Maldonado____
_____, Notary Public, personally appeared
____Chris Lechtanski____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ **Texas** that the foregoing paragraph is true and correct. **MM**
Witness my hand and official seal.

 _(SEAL)_

23-006993

MARJORIE MALDONADO
Notary ID #131434946
My Commission Expires
February 28, 2026

APR

## CERTIFICATE OF RESIDENCE

I, __Chris Lechtanski_____, do certify that the Assignee's precise residence is c/o
Carrington Mortgage Services, 1600 South Douglass Road, Suite 200-A,
Anaheim, California 92806
Witness my hand this ____11 ᵀ''____ day of ____April_____,
20 _23_ .

_____
Signature of Individual

Chris Lechtanski, VP, Collateral Operations

Prepared by: Manley Deas Kochalski LLC
After Recording Return to: Manley Deas Kochalski LLC, P.O. Box 165028,
Columbus OH 43216-5028

23-006993                                                          APR

## EXHIBIT "A"

Legal Description:

ALL THAT CERTAIN messuage and lot or piece of land, situate in the West Ward of the Borough of Lansdale, County of Montgomery and State of Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a stone set for a corner on the Northeast side of Columbia Avenue at the distance of 337 feet 4 inches Southeastward from the middle line of Towamencin Avenue.

CONTAINING in front or breadth on said Columbia Avenue Southeastward 31 feet 4 inches and extending of that width Northeastward between parallel lines at right angles to said Columbia Avenue 155 feet to the Southwest side of an alley 20 feet wide, dedicated to public use forever the Southeast line thereof passing through the middle of the partition wall between this and adjoining house.

HAVING erected thereon a dwelling known as 507 Columbia Avenue, Lansdale, PA 19446

BEING Parcel Number 11-00-02476-00-6

BEING the same premises which Alphonso Jackson, Secretary of Housing and Urban Development, by Indenture dated April 5, 2007, and recorded April 19, 2007, in the Office of the Recorder of Deeds in and for the County of Montgomery, Pennsylvania, in Deed Book 5643, Page 2703, granted and conveyed unto Mehdi Hasan, in fee.

23-006993                                                                       APR

 

**RECORDER OF DEEDS**
MONTGOMERY COUNTY
*Nancy J. Becker*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MTG BK 13751 PG 01872 to 01880**
INSTRUMENT # : 2014011664
RECORDED DATE: 02/26/2014 01:29:59 PM



3048177-0010O

**EXHIBIT C**

**MONTGOMERY COUNTY ROD**

| **OFFICIAL RECORDING COVER PAGE** | | Page : of 9 |
|---|---|---|
| **Document Type:** Mortgage Modification | **Transaction #:** | 3020405 - 1 Doc(s) |
| **Document Date:** 11/18/2013 | **Document Page Count:** | 8 |
| **Reference Info:** | **Operator Id:** | estaglia |
| **RETURN TO:** (Simplifile) | **PAID BY:** | |
| First American Title Insurance Co.- API | FIRST AMERICAN TITLE INSURANCE CO- API | |
| 1100 Superior Avenue #200 | | |
| Cleveland, OH 44114 | | |

**\* PROPERTY DATA:**
Parcel ID #:     11-00-02476-00-6
Address:          507 COLUMBIA AVE

                       LANSDALE  PA
                       19446
Municipality:    Lansdale Borough (100%)
School District:  North Penn

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12638 PG 01312

| **CONSIDERATION/SECURED AMT:**   10054.34 | MTG BK 13751 PG 01872 to 01880 |
|---|---|
| | Recorded Date: 02/26/2014 01:29:59 PM |
| **FEES / TAXES:** | |
| Recording Fee:Mortgage Modification    $64.00 | I hereby CERTIFY that |
| Additional Pages Fee                            $8.00 | this document is |
| | recorded in the |
| **Total:**                                           $72.00 | Recorder of Deeds |
| | Office in Montgomery |
| | County, Pennsylvania. |



**Nancy J. Becker**
**Recorder of Deeds**

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

02/26/2014 01:29:59 PM                    MTG  BK 13751  PG 01873                    MONTCO

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
11-00-02476-00-6   LANSDALE BOROUGH
507 COLUMBIA AVE
KREAMER CHRISTOPHER R & JULIE A              $15.00
B 073  L  U 009  1101 02/26/2014               JU

This Document Prepared By:
NAIEMA HALL
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715
(800) 416-1472

*WHEN RECORDED, RETURN TO:*
*FIRST AMERICAN TITLE INSURANCE CO.*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO 44114*
*NATIONAL RECORDING*

When recorded r 
First American Tit
Loss Mitigation Title Services 1079 12
P.O. Box 27670
Santa Ana, CA  92799
RE: KREAMER - PR DOCS

Tax/Parcel No.  11-00-02476-00-6
_____ [Space Above This Line for Recording Data]
Original Principal Amount: $234,842.00
Unpaid Principal Amount: $221,017.16
New Principal Amount $231,071.50
New Money (Cap): $10,054.34

## LOAN MODIFICATION AGREEMENT (MORTGAGE)
### (Providing for Fixed Rate)

This Loan Modification Agreement ("Agreement"), made this 18TH day of NOVEMBER, 2013, between CHRISTOPHER R KREAMER AND JULIE A KREAMER, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY ("Borrower"), whose address is 507 COLUMBIA AVENUE, LANSDALE, PENNSYLVANIA 19446 and WELLS FARGO BANK, N.A. ("Lender"), whose address is 3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715 amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated MAY 22, 2009 and recorded on JUNE 19, 2009 in BOOK 12638 PAGE 1312, MONTGOMERY COUNTY, PENNSYLVANIA, and (2) the Note, in the original principal amount of U.S. $234,842.00, bearing the same date as, and secured by, the

Wells Fargo Custom HUD Loan Modification Agreement
RedactedRedacted
First American Mortgage Services                    Page 1



Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

**507 COLUMBIA AVENUE, LANSDALE, PENNSYLVANIA 19446**

the real property described is located in **MONTGOMERY COUNTY, PENNSYLVANIA** and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

2. As of, **DECEMBER 1, 2013** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$231,071.50**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$10,054.34** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

3. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.8750%**, from **DECEMBER 1, 2013**. The Borrower promises to make monthly payments of principal and interest of U.S. **$1,086.58**, beginning on the **1ST** day of **JANUARY, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **DECEMBER 1, 2043** (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

5. The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

6. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:

Wells Fargo Custom HUD Loan Modification Agreement 



... Mortgage Services                        Page 2

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

8.  Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

9.  If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure





FHA/Indiana Partner HUD Loan Modification Agreement
First American Mortgage Services                               Page 3

In Witness Whereof, the Lender have executed this Agreement.

**WELLS FARGO BANK, N.A.**                          **Etienne K. Zewou**
By _____  12/06/13    **Vice President Loan Documentation**
                        (print name)                        Date
                        (title)
_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**
STATE OF MINNESOTA          COUNTY OF DAKOTA

The  instrument  was  acknowledged  before  me  this  12/6/2013          by

ETIENNE ZEWOU                          ,                        the

**Vice President Loan Documentation**          of  WELLS  FARGO  BANK,  N.A.,

a **Vice President Loan Documentation**          , on behalf of said corporation.

_____
Notary Public

            KANCHANA NARITH
            NOTARY PUBLIC - MINNESOTA
            MY COMMISSION EXPIRES 01/31/2018

Printed Name: KANCHANA NARITH
My commission expires: 01/31/2018

            KANCHANA NARITH
            NOTARY PUBLIC - MINNESOTA
            MY COMMISSION EXPIRES 01/31/2018

THIS DOCUMENT WAS PREPARED BY:
NAIEMA HALL
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD. MAC# X7801-03K
FORT MILL, SC 29715

Redacted    HUD Loan Modification Agreement
First American Mortgage Services          Page 4



02/26/2014 01:29:59 PM          MTG BK 13751    PG 01877                    MONTCO

In Witness Whereof, I have executed this Agreement.

Borrower: **CHRISTOPHER R KREAMER**          11-26-13
                                             Date

Borrower: **JULIE A KREAMER**                11-26-13
                                             Date

Borrower: _____          _____
                                             Date

Borrower: _____          _____
                    [Space Below This Line for Acknowledgments]     Date

### BORROWER ACKNOWLEDGMENT

STATE OF **Pennsylvania**

COUNTY OF **Montgomery**

On this, the 20th day of November 2013, before me the undersigned officer, personally appeared Christopher R. Kreamer Julie A Kreamer known to me (or satisfactorily proven) to be the person whose name **CHRISTOPHER R KREAMER, JULIE A KREAMER** subscribed to the within instrument, and acknowledged that _____ they _____ (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

Printed Name: **Emily Davis**

My commission expires: 5/28/2014

NOTARIAL SEAL
EMILY DAVIS
Notary Public
LANSDALE BOROUGH, MONTGOMERY COUNTY
My Commission Expires May 28, 2014


Redacted
HUD Loan Modification Agreement
First American Mortgage Services                Page 5


Redacted

## EXHIBIT A

**BORROWER(S): CHRISTOPHER R KREAMER AND JULIE A KREAMER, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

ALL THAT CERTAIN MESSUAGE AND LOT OR PIECE OF LAND, SITUATE IN THE WEST WARD OF THE BOROUGH OF LANSDALE, COUNTY OF MONTGOMERY AND STATE OF PENNSYLVANIA, BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT: BEGINNING AT A STONE SET FOR A CORNER ON THE NORTHEAST SIDE OF COLUMBIA AVENUE AT THE DISTANCE OF 337 FEET 4 INCHES SOUTHEASTWARD FROM THE MIDDLE LINE OF TOWAMENCIN AVENUE. CONTAINING IN FRONT OR BREADTH ON SAID COLUMBIA AVENUE SOUTHEASTWARD 31 FEET 4 INCHES AND EXTENDING OF THAT WIDTH NORTHEASTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO SAID COLUMBIA AVENUE 155 FEET TO THE SOUTHWEST SIDE OF AN ALLEY 20 FEET WIDE, DEDICATED TO PUBLIC USE FOREVER THE SOUTHEAST LINE THEREOF PASSING THROUGH THE MIDDLE OF THE PARTITION WALL BETWEEN THIS AND ADJOINING HOUSE.

ALSO KNOWN AS: 507 COLUMBIA AVENUE, LANSDALE, PENNSYLVANIA 19446




02/26/2014 01:29:59 PM                    MTG  BK 13751    PG 01879                    MONTCO

Date: NOVEMBER 18, 2013
Loan Number: (scan barcode)
Lender: WELLS FARGO BANK, N.A.

Borrower: CHRISTOPHER R KREAMER, JULIE A KREAMER

Property Address: 507 COLUMBIA AVENUE, LANSDALE, PENNSYLVANIA  19446

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____    11-28-13
Borrower                                    Date
**CHRISTOPHER R KREAMER**

_____    11-26-13
Borrower                                    Date
**JULIE A KREAMER**

_____    _____
Borrower                                    Date

_____    _____
Borrower                                    Date

_____    _____
Borrower                                    Date

_____    _____
Borrower                                    Date





First American Mortgage Services                    Page 7

## CERTIFICATE OF RESIDENCE

**TITLE OF DOCUMENT**
LOAN MODIFICATION AGREEMENT

**BETWEEN:**
CHRISTOPHER R KREAMER, JULIE A KREAMER (assignor/Mortgagor/grantor)

**AND:**
WELLS FARGO BANK, N.A. (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within name Mortgagee is:
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715

By: _Naema Hall_
Print Name: _Naema Hall_
Title: _Loan Servicing Specialist_





First American Mortgage Services

 

**MTG BK 14422 PG 02578 to 02589**
INSTRUMENT # : 2017077226
RECORDED DATE: 10/13/2017 12:52:53 PM



3626740-00185



**EXHIBIT D**

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | | Page 1 of 12 |
|---|---|---|
| **Document Type:** Mortgage Modification | **Transaction #:** | 3644379 - 1 Doc(s) |
| **Document Date:** 09/12/2017 | **Document Page Count:** | 11 |
| **Reference Info:** | **Operator Id:** | sford |
| **RETURN TO:** (Simplifile)<br>First American Title Insurance Company<br>1100 Superior Avenue, Suite200<br>Cleveland, OH 44114<br>(602) 513-3564 | **PAID BY:**<br>FIRST AMERICAN TITLE INSURANCE COMPANY | |

**\* PROPERTY DATA:**
Parcel ID #:  11-00-02476-00-6
Address:  507 COLUMBIA AVE

LANSDALE PA
19446
Municipality:  Lansdale Borough (100%)
School District:  North Penn

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12638 PG 01312

| CONSIDERATION/SECURED AMT:  17317.20 | MTG BK 14422 PG 02578 to 02589 |
|---|---|
| | Recorded Date: 10/13/2017 12:52:53 PM |
| **FEES / TAXES:** | |
| Recording Fee:Mortgage | I hereby CERTIFY that this document is |
| Modification  $76.00 | recorded in the Recorder of Deeds Office in |
| Additional Pages Fee  $14.00 | Montgomery County, Pennsylvania. |
| **Total:**  $90.00 | |

  

Jeanne Sorg
Recorder of Deeds

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA. PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

10/13/2017 12:52:53 PM                    MTG  BK 14422  PG 02579                    MONTCO

This Document Prepared By:
SHERON THOMAS-PEGRAM
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715
(800) 416-1472

When Recorded Mail To:                MONTGOMERY COUNTY COMMISSIONERS REGISTRY
FIRST AMERICAN TITLE CO.              11-00-02476-00-6   LANSDALE BOROUGH
DTO -- MAIL STOP 5-2-8               507 COLUMBIA AVE
3 FIRST AMERICAN WAY                  KREAMER CHRISTOPHER R & JULIE A          $15.00
SANTA ANA, CA  92707-9991             B 073 L  U 009 1101 10/13/2017                  JU

Tax/Parcel #:  11-00-02476-006
_____ [Space Above This Line for Recording Data] _____
Original Principal Amount: $234,342.00            Investor Loan No.:
Unpaid Principal Amount: $227,649.93              Loan No: (scan barcode)
New Principal Amount $244,967.13
Total Cap Amount: $17,317.20

## LOAN MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: SEPTEMBER 12, 2017
Borrower ("I")¹ CHRISTOPHER R KREAMER AND JULIE A KREAMER
Borrower Mailing Address: 507 COLUMBIA AVENUE , LANSDALE, PENNSYLVANIA 19446
Lender or Servicer ("Lender"): WELLS FARGO BANK, N.A.
Lender or Servicer Address: 3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") MAY 22, 2009 and the Note ("Note")
date of MAY 22, 2009
Property Address ("Property"): 507 COLUMBIA AVENUE , LANSDALE, PENNSYLVANIA 19446

Legal Description:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Prior instrument reference: Recorded on JUNE 19, 2009 in INSTRUMENT NO. 2009064096 MTG
BOOK

¹ If more is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my")
shall include the plural (such as "we" or "our") and vice versa where appropriate.

Wells Fargo Custom Non HAMP           Page 1                    Redacted

12638  PAGE 01312-01333, of the Official Records of MONTGOMERY COUNTY, PENNSYLVANIA

This Loan Modification Agreement ("Agreement") is made on SEPTEMBER 12, 2017 by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a property recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.

1.  **Borrower Representations.**

    I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification.

    B.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding any eligibility for the modification, are true and correct;

    C.  If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

    D.  I have made or will make all payments required within this modification process;

    E.  In consideration of the covenants hereinafter set forth and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

2.  **The Modification.**

Wells Fargo Custom Non HAM                 

Page 2

A.  The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be **$244,967.13** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B.  Interest at the rate of **4.1250%** will begin to accrue on the New Principal Balance as of **OCTOBER 1, 2017** and the first new monthly payment on the New Principal Balance will be due on **NOVEMBER 1, 2017** Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12).  My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 360 | 4.1250% | 10/01/2017 | $1,187.23 | $435.38 | $1,622.61 | 11/01/2017 |

**\* After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3.  **Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A.  The current contractual due date has been changed from OCTOBER 1, 2016 to NOVEMBER 1, 2017. The first modified contractual due date is NOVEMBER 1, 2017.

B.  The maturity date is OCTOBER 1, 2047.

C.  The amount of Recoverable Expenses* to be capitalized will be U.S. $2,428.09.

*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D.  Lender will forgive outstanding Other Fees U.S. $0.00. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E.  Lender will forgive outstanding NSF Fees U.S. $0.00.

Wells Fargo Custom Non-HAMP                                     

Page 3

F.  Lender agrees to waive all unpaid Late Charges in the amount of U.S. $654.49.

G.  The amount of interest to be included (capitalized) will be U.S. $9,248.33.

H.  The amount of the Escrow Advance to be capitalized will be U.S. $5,640.78.

4.  **Additional Agreements.**

I agree to the following:

A.  If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B.  If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C.  Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to




apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance must be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

F. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

G. If the Borrower's home owners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

H. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the

 

Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I.   If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J.   If Borrower fails to pay Lender the amount due and owing or to pay any monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. These remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note as modified herein, which has been discharged in bankruptcy.

K.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

L.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

M.   CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

N.   If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

O.   All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

Wells Fargo Custom Non HAMP                                     

Page 6

P.  This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

Q.  In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

R.  If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

S.  Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on OCTOBER 1, 2017.

T.  I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

U.  Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification Agreement by SEPTEMBER 27, 2017. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

Wells Fargo Custom Non-HA...           Page 7          

In Witness Whereof, I have executed this Agreement.

Borrower CHRISTOPHER R KREAMER                              Date 9-23-17

Borrower JULIE A KREAMER                                    Date 9-23-17

[Space Below This Line for Acknowledgments]

### BORROWER ACKNOWLEDGMENT

STATE OF PENNSYLVANIA

COUNTY OF Montgomery

On this, the 23rd day of SEPTEMBER 2017 before me Michael D. Sorratore the undersigned officer, personally appeared CHRISTOPHER R KREAMER, JULIE A KREAMER, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

Notary Public

Printed Name: Michael D. Sorratore

My commission expires: 12.21.2019

```
COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Michael D. Sorratore, Notary Public
Whitemarsh Twp., Montgomery County
My Commission Expires Dec. 21, 2019
MEMBER PENNSYLVANIA ASSOCIATION OF NOTARIES
```

Wells Fargo Custom Non HAMP        Page 8



10/13/2017 12:52:53 PM                    MTG  BK 14422      PG 02567                              MONTCO

In Witness Whereof, the Lender have executed this Agreement.

WELLS FARGO BANK, N.A.

By: (print name)    **Elizabeh Gizaw**          *Ezabete*          10-10-17
(title)             Vice President Loan Documentation    (Sign)              Date

[Space Below This Line for Acknowledgments]

LENDER ACKNOWLEDGMENT

STATE OF MINNESOTA
COUNTY OF *Dakota*

This instrument was acknowledged before me   10-10-2017                    (date) by
*Elizabete Gizaw*   (name(s) of person(s)) as   Vice President Loan Documentation (type
of authority, e.g., officer, trustee, etc.) of WELLS FARGO BANK, N.A. (name of party on behalf of whom
the instrument was executed).

*Kenya C Bl*
Notary Public

Printed Name:    Kenya C Blackmon

My Commission Expires:
01/31/2019

KENYA C BLACKMON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/19

Wells Fargo Custom Non H                     Page 9          

## EXHIBIT A

**BORROWER(S):  CHRISTOPHER R KREAMER AND JULIE A KREAMER**

**LOAN NUMBER:**  {seat barcode}

**LEGAL DESCRIPTION:**

The land referred to in this report is situated in the STATE OF PENNSYLVANIA, COUNTY OF MONTGOMERY, CITY OF LANSDALE, and described as follows:

ALL THAT CERTAIN MESSUAGE AND LOT OR PIECE OF LAND, SITUATE IN THE WEST WARD OF THE BOROUGH OF LANSDALE, COUNTY OF MONTGOMERY AND STATE OF PENNSYLVANIA, BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT A STONE SET FOR A CORNER ON THE NORTHEAST SIDE OF COLUMBIA AVENUE AT THE DISTANCE OF 337 FEET 4 INCHES SOUTHEASTWARD FROM THE MIDDLE LINE OF TOWAMENCIN AVENUE.

CONTAINING IN FRONT OR BREADTH ON SAID COLUMBIA AVENUE SOUTHEASTWARD 31 FEET 4 INCHES AND EXTENDING OF THAT WIDTH NORTHEASTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO SAID COLUMBIA AVENUE 155 FEET TO THE SOUTHWEST SIDE OF AN ALLEY 20 FEET WIDE, DEDICATED TO PUBLIC USE FOREVER THE SOUTHEAST LINE THEREOF PASSING THROUGH THE MIDDLE OF THE PARTITION WALL BETWEEN THIS AND ADJOINING HOUSE.

ALSO KNOWN AS: 507 COLUMBIA AVENUE , LANSDALE, PENNSYLVANIA 18446

Wells Fargo Custom Non G      

10/13/2017 12:52:53 PM                    MTG  BK 14422    PG 02589                    MONTCO

## CERTIFICATE OF RESIDENCE

**TITLE OF DOCUMENT**
LOAN MODIFICATION AGREEMENT

**BETWEEN:**
CHRISTOPHER R KREAMER, JULIE A KREAMER (assignor/Mortgagor/grantor)

**AND:**
WELLS FARGO BANK, N.A. (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is.
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715

By: _____
Print Name: Vir/an Hicks
Title: Loan Administration Manager